Dale Ellingsworth was injured when the winch line he had been using became inadvertently entangled with a tree that he was sending into a wood chipper. This caused the line to get wrapped around the 100 mph rotating central cutter drum which in turn instantly accelerated the downstream winch line and log chain into a projectile, whipping through Dale's legs at high speed. There are three issues before this court on appeal. One, should the case have been remanded back to state court from the outset as there was a lack of diversity and there was an in-state defendant? Two, should Dale Ellingsworth be permitted to try his defective products liability negligence claim relating to the lack of a winch safety interlock against defendant Vermeer? And three, should Dale have been permitted to add an agency claim against Vermeer for the conduct of Vermeer's exclusive Oklahoma dealer? On the issue of remand, the applicable standard of review is crucial. The Eighth Circuit in Wilkinson v. Shackleford confirmed removal statutes are strictly construed and any doubts about whether removal is appropriate resolved in favor of state court jurisdiction. Said another way, all doubts about federal jurisdiction should be resolved in favor of remand to state court. In this case, the trial court erred in overruling our motion to remand in that Dale Ellingsworth's petition stated at the very least a colorable claim against his co-employee supervisor, Duane Marshall. Counsel, why doesn't the caterpillar exception apply here? I mean, you voluntarily dismissed the non-diverse defendant here, is that correct? Correct, Judge Coates. I appreciate the question and happy to address that head on. The caterpillar case and the specific language in the caterpillar case specifically applies to a situation where the case has gone to trial and there's been an adjudication at trial because all of those issues of finality and efficiency economy kick in when the case has gone to trial. In this situation, all of our work, the depositions, the expert reports, all of the discovery can still be used when the case is remanded, when the case is sent back. That extra expense in caterpillar where the trial had, the case had gone to trial has not been incurred yet. Don't we have cases, though, that say that judgment is what matters, but the judgment haven't even entered? There are three judges that the defense rely on, Junk, Buffetts, and St. Jude. In our reply brief, we've distinguished those cases, and I would point out that in Junk particularly, that did involve a co-employee claim. It was a diversity case, and the co-employee claim got sent back. Judge Coates, I didn't answer the second part of your question, which was did we voluntarily dismiss the in-state defendant. I would say that in light of the trial court's ruling on the motion to mark, to remand, where it had been declared that we had, according to the trial court, fraudulently joined Mr. Marshall, and the trial court went on to state what appeared to be under a 12B6 analysis, we hadn't stated any kind of a claim against Marshall. I am, as a practitioner, faced with a judgment saying that I have joined someone fraudulently. I didn't know that our only response to that ruling that we thought was appropriate was to withdraw that claim. So on... So you're making a claim it wasn't a voluntary dismissal in the sense that you felt that you were compelled to do so in that... In 21 years, Your Honor, it was literally the first time anyone has ever committed in writing in a public forum that I committed fraud, and we withdrew that claim. And so the acid test on remand is was there a colorable claim? The language is might, with the prevailing case law on the theory pled, might a claim have been stated. And we're talking about co-employee law in Missouri. In my area of law, in the personal injury wrongful death setting, there is a very few areas of law that are more gray and more evolving and more continually changing than co-employee law. There's cases weekly, certainly monthly, on co-employee law. The statutes are changed, not annually, but often. And so under the acid test of should this case be remanded, might the petition have stated a co-employee claim, in the most ambiguous area of the law that I deal with, then it was our position in the trial court and is still here that the petition did state a claim that might prevail, requiring the case from the outset to be remanded. Would we have to sort of save you from your own election of dismissal in order to do that? Judge, I'm not familiar with how to correctly, what the correct vernacular is to address that issue, other than to say at the trial court level we had been told Marshall was joined fraudulently. There was a specific ruling that there was no stated claim against him. We didn't perceive that there was an alternative option. If I may move without additional questions on remand to the summary judgment issue quickly, my time is eating up already. On the summary judgment motion, again in 21 years, the first time I've ever lost a tort product liability case on summary judgment. And I wonder, for the honors on the bench, how many tort products liability summary judgment cases that you see. And the reason why they're rare, and certainly in my practice, it's not a reflection of my ability as a lawyer, but there's almost always fact issues in these cases. And here, there was a litany of them. Mr. Sewell, who is a phenomenal counsel and a great orator, and he will deliver a tremendous argument here in a second, he will go through a list of things that he claims are undisputed material facts. And under the Sappington case, under the Gabler case, our expert, through his report, through his deposition, through his affidavit, court document 134-1, 2, and 3, our expert establishes disputed facts on those fundamental issues. Was it a Vermeer winch? We say it was. We have the parts where they sold all the parts necessary and proactively had to help their dealer figure out what additional parts they needed. Was the winch a Vermeer winch? We say yes. Was the Vermeer winch sold by Vermeer into the stream of commerce? Our expert says yes. And was the Vermeer winch defective? We say yes. And on the issue of what was the focus of the claim, what was the center of the claim, it was always that this winch did not have the safety interlock that it required to be safe. The technology has been around. Judge, possibly since you were studying electrical engineering at the University of Arkansas, shortly afterwards, our own expert in the 80s was installing this type of interlock into machinery. So the technology was there, the theory was sound, proven by the fact that Vermeer now uses the interlock that we were advocating for. And so on this issue of was the trial court correct in essentially dismissing the case and granting the motion for summary judgment, we would urge the court that there were material disputed facts that should allow Dale to try the case of whether this winch should have had an interlock. Without additional questions, I'm going to save the remainder of my time. Thank you, Your Honor. Mr. Stoll. Good morning, Your Honors. May it please the court and counsel, summary judgment should be affirmed. Judge Hayes' summary judgment should be affirmed because it's undisputed that there are no defects in the actual brush chipper that was sold by Vermeer. The brush chipper was not equipped with a winch when it was sold by Vermeer, and the injury was allegedly caused by a modification made by a third party after its sale by Vermeer. It's black letter law in Missouri that whether a product is defective is measured at the time the product leaves the possession and control of the manufacturer. That's true both in strict liability and in negligence. In the first page of a summary judgment briefing, the plaintiff cites the strong case for the elements of a product's liability claim in Missouri. They're the same elements that are used in the Missouri approved instruction 25.4 that Judge Hayes focused on in deliberating summary judgment. And all the focus is on the condition of the product when sold by the manufacturer. The product was then in a defective condition. The plaintiff was damaged as a direct result of the defective condition as existed when the product was sold. The product was put to a reasonably anticipated use, which of course did not apply in this case because Vermeer did not include a winch and did not expect the chipper to be used with a winch. There was a modification after the sale, and as a matter of law, the manufacturer is not liable. Is that undisputed? Counsel has suggested there was expert testimony at least supporting the conclusion that this was made from Vermeer parts, that Vermeer was involved in, in some way, installing the winch. Would you address that issue? Sure. Vermeer was not involved in installing the winch. Vermeer is not aware of any other winches installed to this 1800A brush chippers after they were sold by Vermeer. Vermeer built at the time two types of winches, both from the ground up, or two types of chippers, one with a winch and one without a winch, and they are different. They have different bill of materials. They have different assembly instructions, and the machine with a winch has a lot more hardware on it because it has to accommodate the stresses and the weights and the masses that are handled by the winch. Vermeer didn't make any packages, any winch kits, didn't issue any assembly instructions at all, and didn't have any aftermarket winches for 1800A brush chippers sold in this time period. The only thing that Vermeer had was a parts manual, and the parts manual lists the parts that dealers might have to buy when something goes wrong with a machine. It wears out, it gets damaged, etc. And so this dealer in Oklahoma ordered a whole bunch of winch parts because we produced the invoices. There were six invoices over the course of five weeks. But there isn't any direct testimony that Vermeer was involved in assisting in any respect. Vermeer had a very strict policy as evidenced in its dealer agreement. The operator's manual, the maintenance manual, dealers were well aware that modifications were not to be made to Vermeer machines by dealers or customers without Vermeer's consent. Vermeer was not involved with installing this winch system. Counsel says that there are no cases involving summary judgment in a tort context. We cite three of them. All modifications cases, Chesinski v. Ford Motor Company. A subsequent alteration is a defense district liability. Jones v. Royalby from this court in 1994 where safety devices were removed from a printing press. Judgment as a matter of law affirmed. Gomez v. Clark Equipment Company where someone added, I think it's the most applicable case, someone added a larger LPG tank on a forklift after its sale by Clark so that you can't see backwards anymore. And somebody got hit when the forklift was going in reverse. And the Missouri Court of Appeals said the trial court should have granted a direct verdict because of the modification in that instance. Judge Hayes correctly concluded that it was undisputed that Vermeer did not design, manufacture, or sell a winch system to be added to a chipper. The availability of replacement parts does not make a manufacturer responsible for a post-sale modification. The plaintiff cites component parts cases in his brief to support his claim. But those component part cases are not applicable to this case. They are virtually all involved with component parts that the manufacturer intended be on the product, such as the Ford motor fuel tank or the windscreen bracket on the Kawasaki motorcycle in McDowell or the hoist in the Gabler case that counsel cited a moment ago was intended to be used in the dumbwaiter that was involved in the accident. These component part cases do not go so far as to say that a manufacturer that supplies replacement parts can be liable for modifications made by those parts. If I could briefly address the jurisdiction argument, I think. Your Honor is correct that it's a judgment that what matters. And the court specifically applied the caterpillar doctrine in the junk case and in the buffet's case where summary judgment had been entered. Junk actually was not a co-employee case. It was a case from Iowa where the pesticide applicator was involved. And the court actually issued a 12B6 dismissal of the applicator, the non-diverse party. And the 8th Circuit considered the case and said, well, we have diversity now. They had diversity when the summary judgment was granted because the experts were excluded in junk. And therefore, caterpillar applies. And the court does have jurisdiction to order summary judgment. Then the 8th Circuit says, but the district court was wrong in issuing the 12B6 dismissal, so we'll send it back for remand to the state court to deal with the claim against the pesticide applicator. But the summary judgment stood in junk. Counsel says that his expert says that the Vermeer, that the winch system on this chipper that was involved in Mr. Ellingworth's accident was designed, manufactured, and sold by Vermeer. And we, as Judge Hayes, concluded that that's a conclusory statement that was not supported by facts. And we continue to believe that, that all of the facts in this case, that's just a bare statement standing alone in his affidavit filed in opposition to summary judgment. He concedes still that there were parts on this winch system that were not ordered in the invoices. He concedes that there were parts missing, including the winch hook, that should have been on this chipper if it had a winch. He concedes that there were parts used in the winch that were not ordered from Vermeer. And the claim that the winch did not have an interlock, that's the defect claim, unreasonably dangerous, that is not at issue in the summary judgment matter. We did not move for summary judgment on the defect claim. We moved for summary judgment on the issue of whether Vermeer designed, manufactured, and sold the winch system that was put on the brush chipper after its sale by Vermeer. So, Your Honors, we contend and submit that the court did have jurisdiction, that Judge Hayes carefully considered the summary judgment arguments. If you read her, if you read the transcript of the hearing, she sets forth in detail all of the considerations and all of the issues addressed by the plaintiff in his brief. And we submit that summary judgment should stand. There's also an issue on the motion for remand, and that's an abuse of discretion standard, and the judge held that for several reasons. It was the plaintiff had not established good cause to amend his complaint to assert an agency claim against Vermeer, a claim that Vermeer controlled its dealer in Oklahoma, which would be an ironic claim given Vermeer's specific prohibition against modifying its equipment, that it controlled the dealer to install equipment that was prohibited. So we ask, Your Honors, that the judgment of the Western District Judge Hayes be affirmed. Thank you very much. Thank you, Mr. Chairman. I had a procedural question. Probably doesn't matter, but I was wondering, is Vermeer Great Plains a successor to Vermeer Sales? No. Purchaser of assets or what? Vermeer, it's complicated, but Vermeer Great Plains purchased assets from a separate entity. The Vermeer Oklahoma dealership failed. Vermeer stepped in, Vermeer Manufacturing, our client, stepped in, and they formed a company to basically run the dealership until they could get the dealership in Oklahoma to a different company, which was Vermeer Great Plains. So there were asset purchases not from Vermeer Oklahoma to Vermeer, but from the company that repossessed the Vermeer Oklahoma equipment. Thank you. And then Vermeer Marketing, the interim company, sold those assets to Vermeer Great Plains. Vermeer Great Plains was not a successor. Thank you.  Mr. Chanter. Thank you, Your Honors. Judge Cobes, that was a great question and is at the heart of our analysis on the primary issue on that motion for summary judgment, is was this a Vermeer winch? Did they sell it? And your question was, is that disputed? Absolutely, it's disputed. Our expert went through, and again, through his report and deposition and affidavit, our expert went through an analysis of those parts that this Oklahoma dealer, Vermeer Oklahoma dealer, was ordering. And he could tell that some major components of the winch system were not in the parts manual. I think maybe even the boom was one of them. And so from that, he is able to identify that Vermeer must have proactively helped this Oklahoma Vermeer dealer figure out how to order this winch. There's no way that the Oklahoma dealer, without knowing the part numbers, can order everything they need for the winch unless Vermeer helps them. So they absolutely were part, at least disputed fact, they absolutely were part of the sale. The issue of whether some parts were included, some parts weren't included, was there support plates, were there the right kind of welding, none of that affects the focus of the defect, which is it should have had this interlock. And I see my time has expired, and so without additional questions, I will sit down. Thank you. Thank you, Your Honor.